UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

VAUGHN LEE TAYLOR, )
)
    Petitioner, )
)
v. ) NO. 3:03-cv-667
) (CR. 3:02-cr-70)
UNITED STATES OF AMERICA, )
)
    Respondent. )

## MEMORANDUM OPINION

Vaughn Lee Taylor brings this *pro se* motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255, alleging, as grounds for relief, ineffective assistance of counsel and a breach of the plea agreement [Docs. 1 and 2]. The United States has responded to the motion, contending that relief is not justified with respect to the claims of ineffective assistance and that, in the plea agreement, the petitioner waived his right to assert the "breach" claim [Doc. 6].

### I. STANDARD OF REVIEW

This Court must vacate and set aside a petitioner's conviction if it finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation

of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 434, 428 (1962)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively a petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F2d 85, 92 (6th Cir. 1986). The Court finds no need for an evidentiary hearing in this case.

### B. **FACTUAL BACKGROUND**

On June 5, 2002, a federal grand jury returned a five-count indictment charging petitioner Vaughn Lee Taylor with drug- and firearm-related offenses [Doc. 1 in Criminal Action No. 3:02-cr-70]. Count One charged him with conspiring to distribute over 500 grams of a mixture containing methamphetamine, in violation of 21 U.S.C. § 846, § 841(a)(1) and § 841(b)(1)(A). Count Two charged him with possession with the intent to distribute over 50 grams of methamphetamine mixture on May 31, 2002, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and Count Three alleged that, on the same date, he also possessed with the intent to distribute marijuana, which violated 21 U.S.C. § 841(a)(1). Count Four charged him with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and Count Five with possession of a firearm after

2

having been identified as an unlawful user of a controlled substance, which violated 18 U.S.C. § 922(g)(3).

The United States filed a notice of intent to use two prior state felony drug convictions to enhance his punishment. Subsequently, the petitioner entered into a plea agreement, and an Agreed Factual Basis was prepared and filed along with the plea agreement [Docs. 33 and 34 in Criminal Action No. 3:02-cr-70]. In the factual agreement, the petitioner admitted that, on May 31, 2002, pursuant to a warrant, his property in Madisonville, Tennessee had been searched and that over $8,000 in cash, several firearms, methamphetamine, and marijuana had been discovered on the property. He acknowledged that officers had also searched him, finding $530 cash. He stipulated that he had given a written statement acknowledging that the methamphetamine found in his residence belonged to him; that he had been dealing in methamphetamine since 1995 and marijuana since the 1980s; that his average purchase of methamphetamine was 1.5 pounds; and that he made such purchases 8-9 times per year, paying $12,000 per pound for the methamphetamine. Further, he agreed that the substance found during the search was weighed and analyzed by a forensic chemist and determined to be 316 grams of methamphetamine and that the green, leafy substance was found to be 43.3 grams of marijuana.

Thereafter, the petitioner pled guilty to Counts Two and Four and was sentenced, as a career offender, to a term of imprisonment of 327 months on Count Two

3

and 120 months on Count Four, to be served concurrently with Count Two.[1] He did not appeal. Instead, this timely petition followed, containing two main grounds for relief.

## C. **DISCUSSION**

### 1. Ineffective Assistance of Counsel

The petitioner's first ground for relief is that he received ineffective assistance of counsel.

A petitioner who alleges a claim of ineffective assistance of counsel must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Where a petitioner challenges a guilty plea, he must establish: 1) that the advice he received from counsel in entering the plea was not within the range of competence demanded of attorneys in criminal cases and 2) that he was actually prejudiced in his defense because there is a reasonable probability that, without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985).

In judging an attorney's conduct, a court should view counsel's performance with great deference, engaging in a strong presumption that counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional

---

[1] Pursuant to the plea agreement, Counts One, Three, and Five were dismissed at sentencing, upon the United States' motion [Doc. 33 and Sent. Hr'g Tr. at 7 in Criminal Action No. 3:02-cr-70]. The parties also agreed that the appropriate sentence would be a 327-month term of imprisonment [Doc. 33].

4

judgment." *Strickland*, 466 U.S. at 689-90. A finding of serious attorney incompetence will not justify setting aside a conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.*, at 691-92. Counsel is constitutionally ineffective only if a performance which fell below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

During his guilty plea and sentencing proceedings, the petitioner was represented by Elizabeth B. Ford, the Federal Public Defender. The petitioner points to two instances, which according to him, illustrate that Ms. Ford gave him ineffective assistance.

a) *Type of Methamphetamine*: As the first example of his counsel's ineffectiveness, the petitioner charges that Ms. Ford failed to put the Government to its proof as to the type of methamphetamine involved in the drug crime. More specifically, the petitioner asserts that counsel failed to investigate and/or to require that the prosecution establish, during the plea proceedings and at sentencing, whether the drug involved was D-methamphetamine or L-methamphetamine.

The deficient-performance component of *Strickland* requires the petitioner to show that counsel's failure to ascertain the type of methamphetamine fell below a standard of reasonableness. *Strickland*, 466 U.S. 690 ("A decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") The Sixth Circuit has observed that "there is no

5

market for L-methamphetamine because it has only one-tenth the potency of D-methamphetamine, and its main ingredient is difficult to obtain, unlike the main ingredient of D-methamphetamine." *United States v. Laster*, 248 F.3d 525, 530 (6th Cir. 2001), *cert. denied*, 543 U.S. 1151 (2002). Under the circumstances, especially given the apparent lack of demand for L-methamphetamine, the Court cannot say that counsel's failure to inquire or put the government to its proof as to the kind of methamphetamine fell outside the wide range of professionally competent assistance. *See United States v. James*, 915 F.Supp. 1092, 1096 (S.D.Cal.1996) (commenting that, in hundreds of methamphetamine cases presided over by the district court, no defense attorney ever had raised the issue of methamphetamine type). The Court, therefore, finds no deficiency of performance.

Moreover, there is no proof, nor even an allegation, that the drug possessed was L- methamphetamine. Indeed, the petitioner impliedly concedes as much by asking the Court to set a hearing for the purpose of determining the type of methamphetamine involved. And, even if it was L-methamphetamine, this would not have affected his sentence. This is so because his sentence was calculated based on the lowest possible rate for methamphetamine.[2] Therefore, counsel's supposed error in failing to clarify the type

---

[2] Because the petitioner's offense involved two different drugs, the amount of methamphetamine was converted into marijuana for purposes of computing the total amount of drugs involved in the offense. In making this calculation, the probation officer used the conversion rate for simple methamphetamine—not the rate for "ice" or "methamphetamine (actual)," both of which are converted at a rate ten times greater than that used for simple methamphetamine. *See* U.S.S.G. § 2D1.1, Drug Equivalency Tables, comment. (n. 10).

Case 3:02-cr-00070-RLJ   Document 46   Filed 08/25/05   Page 6 of 13   PageID #: 8

of methamphetamine did not cause the petitioner to lose what he "otherwise would probably have won" and, thus, did not result in prejudice.

      b) *Felon in Possession of a Firearm*: The second illustration of ineffective assistance cited by the petitioner is that his attorney failed to challenge the § 922(g)(1) charge. Apparently, pursuant to the decision in *United States v. Lopez*, 514 U.S. 549 (1995), the petitioner is suggesting that § 922(g) is unconstitutional on its face because it exceeds Congress's power under the Commerce Clause.[3] Simply put, the petitioner is wrong.

The Supreme Court has found the predecessor statute under which petitioner was convicted to be constitutional, *see Scarborough v. United States*, 431 U.S. 563 (1977), and this Circuit has found that the present statute, 18 U.S.C. § 922(g)(1), represents a valid exercise of Congress's authority under the Commerce Clause. *United States v. Turner*, 77 F.3d 887, 889 (6th Cir. 1996) (a post-*Lopez* decision). *See also United States v. Chesney*, 86 F.3d 564, 568 (6th Cir. 1996) (listing cases and noting that no contrary finding has been made by any court to consider issue), *cert. denied*, 520 U.S. 1282 (1997). Section 922(g) is not facially unconstitutional, and there was no reason for counsel to assert otherwise.

---

    [3] Under 18 U.S.C. § 922(g)(1), it is illegal for a convicted felon to "possess in or affecting [interstate] commerce, any firearm or ammunition." The Commerce Clause allows federal regulation of activities that substantially affect interstate commerce. *Lopez,* 514 U.S. at 559.

7

The petitioner also maintains that counsel was ineffective for failing to show that § 922(g)(1) was unconstitutionally applied to him. To convict under 18 U.S.C. § 922(g)(1) requires proof of the following three elements: (1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm, (3) that the firearm had traveled in or affected interstate commerce. *United States v. Walker*, 160 F.3d 1078, 1087 (6th Cir.1998).

The petitioner argues that the third element is missing here because the government failed to prove a sufficient nexus between interstate commerce and the firearm at issue in his case or even "how he came to possess the gun." Contrary to the petitioner's suggestion, the government did not have to show how the gun came into his possession to prove the interstate commerce connection, but only that the firearm he possessed had moved *at some point in time* in interstate commerce. *United States v. Murphy*, 107 F.3d 1199, 1211-12 (6th Cir. 1997). The petitioner stipulated, in the Agreed Factual Basis, that the firearms found at his residence were examined by a firearms expert who determined that they were manufactured outside the State of Tennessee and that they functioned as designed. The government is required to show only a minimal nexus between the firearm and interstate commerce. *Scarborough*, 431 U.S. at 566-67 (interpreting the predecessor to § 922(g)(1)). The evidence admitted by the petitioner in the factual agreement is sufficient to satisfy the "in commerce or affecting commerce" element of the statute because it demonstrated that, at some point in time, the handgun possessed by the petitioner had moved in interstate commerce.

The petitioner's citation to *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000),[4] does not alter the Court's conclusion because there is no indication in *Jones* that the "minimal nexus test" is being discarded. *United States v. Napier*, 233 F.3d 394, 401 (6th Cir. 2000). Moreover, in *Napier*, the Sixth Circuit considered § 922(g) in the context of *Jones* and found that the statute does not violate the Commerce Clause. *Ibid*.

Thus, counsel's failure to make either a facial or "as applied" challenge to § 929(g)(1) did not constitute ineffective assistance because any such a challenge would have been baseless. *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986) (counsel is not required to raise frivolous claims to avoid a latter charge of ineffective assistance).

2. <u>Breach of the Plea Agreement</u>

The petitioner alleges that, that during the plea bargaining process, the United States Attorney's Office entered into an implied contract with him, whereby it would recommend that the state criminal charges pending against Tanya Jones would be dismissed in return for his guilty plea. He maintains that the promise concerning Ms. Jones was one of the paramount reasons underlying his agreement to pled guilty and that the government has not kept its promise.

---

[4] *Jones* held that the federal arson statute, 18 U.S.C. § 844(i), did not reach arson of an owner-occupied residence, since such property could not be said to have been "used in ... any activity affecting commerce" as required by the statute.

The United States agues that this issue was waived in the plea agreement by the means of the following provision:

> The Defendant further agrees not to file any motions or pleadings pursuant to 28 U.S.C. § 2255. Thus, the Defendant knowingly, intentionally and voluntarily waives his right to collaterally attack the plea or sentence in this instant case. ... The parties agree that the Defendant retains his right to raise claims of ineffective assistance of counsel or prosecutorial misconduct [Doc. 33, ¶ 5 in Criminal Action No. 3:02-cr-70].

A provision in a plea agreement waiving the right the file a § 2255 motion for any reason other than to assert claims of ineffective assistance of counsel, prosecutorial misconduct, or changes in the law is an enforceable waiver. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999) ("Accordingly, we hold that a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."); *see also Davila v. United States*, 258 F.3d 448 (6th Cir. 2001) (defendant's waiver of § 2255 relief in a plea agreement barred a collateral attack based upon ineffective assistance of counsel).

This Court scrupulously complies with Rule 11 of the Federal Rules of Criminal Procedure governing acceptance of guilty pleas and determines whether a defendant understands the nature of the charge against him, the minimum and maximum penalties he is facing, and the rights he is giving up by pleading guilty.

In the plea hearing, the Court specifically questioned the petitioner regarding the waiver provision in the plea agreement to ascertain whether he understood what he

was forfeiting in the agreement. During the plea colloquy, the following exchanges occurred:

> THE COURT: You also understand that in that plea agreement you've agreed not to file any motions or pleadings pursuant to 28 United States Code Section 2255, whereby you have waived your right to attack the guilty plea here. Do you understand that?
>
> MR. TAYLOR: Yes.
>
> THE COURT: And I take it the sentence as well, Ms. Ford?
>
> MS. FORD: Yes, sir.
>
> THE COURT: Imposed by virtue of this plea agreement. Have you explained this to him, Ms. Ford?
>
> MS. FORD: I have.
>
> THE COURT: Do you think he understands the concept of this?
>
> MS. FORD: I believe that he does.
>
> THE COURT: Do you think you understand that, Mr. Taylor?
>
> MR. TAYLOR: Yes, I do.
>
> THE COURT: You're preserving your right to claim ineffective assistance of counsel. Ms. Ford's a good lawyer, but you might want to keep that. And prosecutorial misconduct on the part of the U.S. Attorney. But otherwise you're giving up those rights; do you understand that?
>
> MR. TAYLOR: Yes.

[Doc. 45, Plea Hr'g Tr. at 8-9 in Criminal Action No. 3:02-cr-70].

Thereafter, the Court found that the petitioner understood his rights and was competent to plead guilty. Accordingly, the petitioner has waived his right to challenge his guilty plea based on a supposed breach in the plea agreement.[5]

Because the petitioner waived his right to raise this claim, the Court will not address the United States' argument that there was no oral promise underlying the plea agreement and that this is shown by the parties stipulations in the plea document itself (i.e., the provision stating that the plea agreement comprised the full, complete agreement and understanding between them and that there were no other agreements, promises, undertakings or understandings between them).

## IV. **CONCLUSION**

For reasons expressed in this opinion, the Concludes that the petitioner has not established that his attorney provided constitutionally ineffective assistance and that he has waived his right to raise the claim involving a breached plea agreement. Thus, his motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 will be **DENIED**.

A separate order will enter.

---

[5] This issue may also have been procedurally defaulted by the petitioner's failure to offer it at sentencing or on appeal, assuming that he knew about the supposed broken promise at that time. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

**ENTER**:

         *s/ James H. Jarvis*
         JAMES H. JARVIS
       SENIOR U. S. DISTRICT JUDGE